UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WALTER F. SCOTT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:08CV01296 ERW ) |
| SUBURBAN JOURNALS OF GREATER ST. LOUIS, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Motion for Summary Judgment of Defendants Suburban Journals of Greater St. Louis, LLC, St. Louis Post-Dispatch, LLC, and Pulitzer Inc. [doc. #120].

**I.   BACKGROUND FACTS[1]**

On August 8th, 2008, Plaintiff Walter Scott ("Plaintiff"), representing his business Atrium Construction & Investments, visited the office of Defendant Suburban Journals of Greater St. Louis, LLC ("Suburban Journals"). Interested in an advertising plan for his business, Plaintiff met briefly with Tom Hogan ("Hogan"), a Suburban Journals Advertising Account Executive, and they agreed on an advertisement to run for four weeks in *North County Journals*, a publication of Suburban Journals.

---

[1] The Court's recitation of the facts is taken from Defendants' Statement of Undisputed Material Facts [doc. #121]. Plaintiff did not submit a statement of disputed facts in his opposition to Defendants' motion, despite numerous opportunities to do so, and the Court therefore deems all facts in Plaintiff's Statement of Undisputed Material Facts to be admitted for purposes of summary judgment. *See* Local Rule 7-4.01(E). In any event, the only factual dispute that is arguably material relates to the contents of a conversation between Plaintiff and a Suburban Journals employee, and it is discussed below in Section III.A.

After meeting with Plaintiff and pursuant to company policy, Hogan checked the Suburban Journals system to determine whether Plaintiff's business had an open account. Hogan's search revealed an inactive account under that name, and Suburban Journals' finance department directed Hogan to fill out a new customer form and submit it to the company's credit department in order to reactivate the account. In response, the credit department informed Hogan that Plaintiff's business had an outstanding debt of $246.20 from a series of Suburban Journals advertisements in 2002, and that Plaintiff would need to settle the past due account in order to reactivate his account and place his advertisement. Hogan telephoned Plaintiff to inform him that Suburban Journals would be unable to run his advertisements until he paid the balance due on the inactive account. Plaintiff responded that he would do so and would speak with Hogan later concerning the advertisements.

Plaintiff had no further contact with Suburban Journals, and instead filed the present action against Suburban Journals, its affiliate St. Louis Post-Dispatch, LLC, and their parent company Pulitzer Inc. (collectively, "Defendants"), alleging that Defendants violated 42 U.S.C. § 1981 by discriminating against Plaintiff on the basis of his race and using debt collection practices that violated the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff also asserts claims against Defendants for tortious interference with business expectancy.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material

facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. DISCUSSION

Defendants[2] contend that they are entitled to summary judgment on Plaintiff's § 1981 claims and his claims for tortious interference with business expectancy because there are no genuine issues of material fact with respect to any of his causes of action.

### A. *Plaintiff's § 1981 Claims*

Defendants argue that summary judgment on Plaintiff's § 1981 claims is proper because (1) there is no evidence Defendants violated the Fair Debt Collection Practices Act ("FDCPA"); (2) a violation of the FDCPA is not actionable under § 1981; and (3) Plaintiff cannot establish a prima facie case under § 1981 or demonstrate, in response to Defendants' nondiscriminatory explanation for refusing to deal with Plaintiff, that this reason is pretextual. Plaintiff argues that he has demonstrated that Defendants refused to enter into a business transaction with him based on his race, in violation of § 1981.

---

[2] In their Motion, Defendants do not address whether Plaintiff has any basis for asserting claims against Suburban Journals' affiliate St. Louis Post-Dispatch, LLC or parent Pulitzer Inc. The Court therefore treats them as proper defendants but does not express any opinion on the issue. Although Plaintiff's factual allegations in this case refer only to Suburban Journals, the Court refers to Defendants collectively in this Section for the sake of clarity.

At the outset, the Court agrees with Defendants that a violation of the FDCPA, without more, is not actionable under 42 U.S.C. § 1981.[3] In order to succeed on a "right-to-contract" claim under § 1981, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination interfered with the plaintiff's ability to "make and enforce contracts," as defined in § 1981.[4] *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). The *McDonnell Douglas* burden-shifting framework applies in § 1981 cases in which there is no direct evidence of discrimination; if the plaintiff makes a prima facie case, the burden shifts to the defendant to show a legitimate and nondiscriminatory explanation for the conduct at issue, and this showing then shifts the burden back to the plaintiff to demonstrate that the defendant's rationale is a pretext for discriminatory animus. *Harris v. Hays*, 452 F.3d 714, 717-18 (8th Cir. 2006).

The only piece of arguably direct evidence of discrimination is Plaintiff's contention that Hogan, an Advertising Account Executive with Suburban Journals, revealed his discriminatory intent by telling Plaintiff "you people have to pay your bills" and displaying a generally "nasty attitude," which Plaintiff states made him "feel dirty, like [he] was a disease."[5] Assuming for the

---

[3] The Court also agrees with Defendants that in any event, Defendants could not violate the FDCPA because the FDCPA prohibits unfair collection practices by "debt collectors," defined as those whose business has the "principal purpose" of collecting debts. *See* 15 U.S.C. § 1692a(6) (defining "debt collector"); 15 U.S.C. § 1692f (setting out the "unfair practices" prohibited for all "debt collectors"). Defendants have presented evidence that their principal business purpose is publishing newspapers, and Plaintiff has not refuted that point with any contradictory evidence.

[4] This includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

[5] In an affidavit submitted in opposition to Defendants' Motion, Plaintiff admits that "Plaintiff was only racially disparaged by Tom Hogan stating to Plaintiff, that you people have to

5

sake of argument that this evidence is properly before the Court,[6] the Court still finds that "you people" does not establish discriminatory intent given the numerous possible non-discriminatory interpretations in this context. "You people" could refer, for example, to entities in the construction business, persons owing Suburban Journals money, persons affiliated with Atrium Construction & Investments, or even simply persons who take out advertisements with Suburban Journals generally. *See Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 314 (S.D.N.Y. 2000) (in Title VII action, "'you people' cannot be deemed inherently racially offensive without greater specificity as to the context of [its] usage"); *Clay v. Interstate Nat. Corp.*, 124 F.3d 203, at *3 (7th Cir. 1997) (unpublished table decision) ("you people" comment could not persuade rational factfinder in Title VII case to find race-based discrimination where there was substantial evidence supporting the adverse employment decision). Thus, the Court concludes that this statement is not direct evidence of discrimination, and the *McDonnell Douglas* burden-shifting framework therefore applies to this case. *See Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009) (defendant's e-mail discussing the status of plaintiff's visa and the possibility that he would raise discrimination claims does not constitute direct evidence of discrimination and *McDonnell Douglas* applies).

Even if Plaintiff were able to make a prima facie case under § 1981, Plaintiff's claims fail under the *McDonnell Douglas* analysis because Plaintiff has not refuted Defendants' legitimate, non-discriminatory explanation for their refusal to do business with him: their desire to have him settle his past due account. *Harris*, 452 F.3d at 717-18. Plaintiff has not disputed that

---

pay your bills." Pl. Ex. 6, ¶ 7 [doc. #138].

[6] As noted above, the Court has deemed Defendants' Statement of Undisputed Material Facts admitted for purposes of summary judgment based on Plaintiff's failure to respond to that document and submit his own statement of disputed facts.

Defendants have such a policy with respect to overdue accounts; instead, he argues that Defendants, having established this policy, failed to establish appropriate procedures and guidelines to ensure that it would not be selectively or pretextually enforced against minorities, and that Defendants enforced their policy against him in that manner.  Plaintiff has stated multiple times, however, that Defendants refused to run Plaintiff's advertisement because Plaintiff allegedly owed the debt to Defendants – that is, *not* because Defendants intended to discriminate against Plaintiff due to his race.  This motive justifies Defendants' actions – at least in terms of claims brought under § 1981 – regardless of whether Plaintiff actually owed the debt or whether the statute of limitations for collection of the debt had run.  Furthermore, to the extent Plaintiff claims that Defendants generally enforce the policy at issue only against minorities, Plaintiff has not presented any evidence supporting that assertion.

As a result, the Court finds that Defendants are entitled to summary judgment on Plaintiff's § 1981 claim because Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants acted with discriminatory intent.

### B. *Plaintiff's Claims for Tortious Interference with Business Expectancy*

Defendants argue that they are entitled to summary judgment on Plaintiff's claims for tortious interference with business expectancy because Plaintiff cannot establish all the elements of the tort.  Plaintiff contends that he has presented sufficient evidence that Defendants, by refusing to run his advertisements, tortiously interfered with the business opportunities that would have otherwise resulted.

The elements of tortious interference with business expectancy are: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach

induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Hensen v. Truman Med. Ctr., Inc.*, 62 S.W.3d 549, 553-54 (Mo. App. W.D. 2001). With respect to the requirement of a valid business expectancy, the plaintiff must show more than a tenuous hope of establishing a business relationship; the expectancy must be "reasonable and valid under the circumstances alleged." *Serv. Vending Co. v. Wal-Mart Stores, Inc.*, 93 S.W.3d 764, 769 (Mo. App. S.D. 2002). More specifically, the plaintiff must show a "reasonable probability or expectancy of entering into a business relationship." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1017 (8th Cir. 2008) (applying Missouri law).

Plaintiff's claims fail because he has not demonstrated that he had a valid business expectancy arising out of Defendants' publication of his advertisements. At most, Plaintiff had the hope that potential customers would respond to his advertisements, and comparing Plaintiff's claim to other situations in which courts applying Missouri law have considered the validity of a claimed business expectancy, the Court finds that this is insufficient. *See, e.g.*, *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 565 (Mo. App. W.D. 1999) (purchaser of list of persons turning 65 years old did not have a valid business expectancy in selling Medicare supplement insurance policies); *Tri State HDWE, Inc. v. John Deere Co.*, 561 F. Supp. 2d 1064, 1077-78 (W.D. Mo. 2008) (written offer to purchase dealership insufficient to establish expectancy because it was "mere speculation" that the buyers would have gone through with the purchase). In short, the mere possibility that Plaintiff's advertisements would have attracted customers does not demonstrate that Plaintiff had a "reasonable probability" of entering into a business transaction. *Craig Outdoor*, 528 F.3d at 1017.

The Court therefore concludes that Defendants are entitled to summary judgment on Plaintiff's claims for tortious interference because the undisputed facts demonstrate that Plaintiff did not have a valid business expectancy.

## IV.   CONCLUSION

The Court finds that Defendants are entitled to summary judgment on all of Plaintiff's claims.  Plaintiff's claims under § 1981 fail because he has not presented sufficient evidence to raise a genuine issue of material fact as to whether Defendants acted with discriminatory intent in refusing to run his advertisements until he settled an allegedly past due account.  Summary judgment in favor of Defendants on Plaintiff's claims for tortious interference with business expectancy is warranted because Plaintiff did not have a valid business expectancy arising out of the publication of his advertisements by Defendants.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #120] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Sur-Reply to Motion [doc. #142] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike [doc. #137] and Plaintiff's Objection and Motion for Reconsideration [doc. #141] are **DENIED**.

Dated this 19th Day of October, 2009.

<br>

_E. Richard Webber_
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE